| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ALLEN McWHORTER, | Case No.  1:20-cv-00215-JLT |
| Petitioner, | DEATH PENALTY CASE |
| v. | ORDER (1) GRANTING FURTHER EQUITABLE TOLLING TO AND INCLUDING JANUARY 30, 2023, and (2) DENYING ALTERNATIVE REQUEST FOR STAY |
| RONALD DAVIS, Warden of California State Prison at San Quentin, | |
| Respondent.[1] | |

On August 5, 2022, petitioner Richard Allen McWhorter, through appointed counsel Saor Stetler and Kresta Daly, moved to equitably toll the limitations deadline under 28 U.S.C. § 2244 for the filing of his federal habeas petition in this action. The motion, petitioner's fifth, requests that the current as tolled petition filing deadline of August 1, 2022, be further equitably tolled to and including January 30, 2023, due to continuing extraordinary circumstances raised by COVID-19 and its variants and subvariants (collectively "COVID-19"), and individual and governmental responses thereto. Alternatively, petitioner moves for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269, 278 (2005), pending the filing of a federal first amended petition for writ of habeas corpus.

On August 16, 2022, respondent Warden Ronald Davis, through counsel, Deputy

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Ron Broomfield, Warden of San Quentin State Prison, shall be substituted as respondent in place of his predecessor wardens.

1  Attorney General Brook Bennigson, timely filed his response to the motion. On August 23,
2  2022, petitioner timely filed a reply in support of the motion. No hearing date has been set and
3  the Court finds that none is required. *See* Local Rule 230(g). The matter is deemed submitted
4  for a decision. *Id.*; (*see also* Doc. No. 43 at 1 n.1.)

5      Having considered the pleadings, the record, and matters judicially noticed, the Court
6  will grant petitioner's motion for further equitable tolling of the applicable statute of
7  limitations to and including January 30, 2023, as explained below.

8                        I.        BACKGROUND

9      On February 26, 1998, petitioner was convicted of two first degree murders and first
10  degree residential robbery, with special circumstances of multiple-murder and robbery-murder
11  found true, and sentenced to death. *People v. Richard Allen McWhorter*, Kern County
12  Superior Court Case No. 65352A.

13      On August 6, 2009, the California Supreme Court affirmed petitioner's judgment of
14  conviction and sentence on automatic appeal. *People v. Richard Allen McWhorter*, 47 Cal. 4th
15  318, *rehearing denied October 14, 2009, as modified October 14, 2009*. On October 4, 2010,
16  the United States Supreme Court denied certiorari. *Richard Allen McWhorter v. California,*
17  562 U.S. 844.

18      On January 22, 2020, the California Supreme Court summarily denied petitioner's
19  habeas corpus petition. *In re McWhorter,* Cal. Case No. S180404.

20      On February 11, 2020, petitioner began this federal habeas proceeding pursuant to 28
21  U.S.C. § 2254.

22      On March 30, 2020, counsel were appointed to represented petitioner in this
23  proceeding, pursuant to the Criminal Justice Act. (*See* Doc. No. 9, citing 18 U.S.C. § 3599.)

24      On July 24, 2020, respondent lodged the record.

25      On October 7, 2020, the Court granted petitioner's motion to equitably toll the
26  limitations deadline under 28 U.S.C. § 2244 from January 22, 2021, to and including March
27  31, 2021, due to delay in the appointment of federal habeas counsel.

28      The Court granted petitioner's several additional motions to further equitably toll the 28

U.S.C. § 2244 deadline from March 31, 2021 to and including August 1, 2022, on grounds of extraordinary circumstances raised by the COVID-19 pandemic then before it, impeding petitioner's right to the assistance of appointed habeas counsel in preparing a complete federal petition.

During the period of tolling, on October 22, 2021, petitioner filed in this proceeding a 297-page protective petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, stating twenty-two fully exhausted record-based claims. (Doc. No. 34; *see also* Doc. No. 43 at 2 n.3.)

## II.   DISCUSSION

### A.   Equitable Tolling

Petitioner argues that COVID-19 and related restrictions and hesitancies continue to impede constitutionally adequate investigation, development, and presentation of new forensic, mental state and mitigation evidence and potentially colorable new claims of ineffective assistance of state counsel, notwithstanding ongoing and anticipated diligent efforts in pursuit of his federal rights. (*See* Doc. No. 43 at 3-10, citing American Bar Association ("ABA") Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.5 and Commentary (2003); ABA Guideline 10.7 and Commentary (2003); ABA Guideline 10.16.1.E.2 and Commentary (2003); ABA Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, 36 Hofstra L. Rev. 677, Guideline 10.11 (2008)); *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *see also* Doc. No. 45 at 5-6, citing Doc. No. 40-3).[2]

Petitioner argues that since this matter was last before the Court, the COVID-19 Omicron BA.4 and BA.5 subvariant surge has impeded (1) in-person access to petitioner at San Quentin which in turn has impeded completion of an investigatory mitigation plan, and (2) any necessary field investigation outside of San Quentin pursuant to that plan. (*See* Doc. No. 43 at 3-10; *see also* Doc. No. 45 at 2-4.) He suggests that given petitioner's advanced age and apparent psychosocial factors, only regular in-person communication provides the effective

---

[2] All reference to page numbering for electronically filed documents is to CM/ECF system pagination.

1  communication required to pursue these defense tasks.  (*See Id.*; *see also* Doc. No. 40-1.)  He
2  suggests that his counsel have not been able to retain mitigation and investigation specialists or
3  forensic and mental health experts, and that investigation of potential new federal habeas
4  claims has not begun in earnest.  (*See* Doc. No. 43 at 3-10; *see also* Doc. No. 45 at 7.)

5        Petitioner further argues that he and his counsel have been diligent in pursuing his
6  federal rights notwithstanding the sparse mitigation investigation in state court and petitioner's
7  apparent developmental and cognitive impairments.  (*Id.*)  He points out that (1) his counsel
8  have assembled, organized, and reviewed the available state record, (2) interviewed prior
9  counsel, (3) filed a federal protective petition, (4) started preparation of an investigative
10 mitigation plan, (5) reviewed and contacted potential investigation and mitigation specialists
11 and experts, and (6) located potential witnesses.  (*Id.*)

12       Respondent opposes further equitable tolling.  He argues that petitioner's request for
13 "prospective" equitable tolling is moot because the current deadline expired before the instant
14 motion was filed, and that retrospective equitable tolling is unavailable because no untimely
15 amended federal petition has been filed.  (*See* Doc. No. 44 at 2-3.)  He argues that COVID-19
16 no longer is an extraordinary circumstance for purposes of equitable tolling because (1)
17 pandemic related restrictions of masking and social distancing have eased and are no longer
18 required in many situations, and (2) 72% of California residents, 94% of San Quentin inmates,
19 and 86% of San Quentin staff  are fully vaccinated.  (*See id.* at 3-5.)  He argues that
20 development and presentation of record claims does not require access to and the assistance of
21 petitioner.  (*See id.* at 5-6.)  He argues that the Court cannot grant habeas relief based upon
22 non-record evidence and unexhausted claims.  (*See id.* at 5-6, 8.)  He argues that the state
23 record (including defense expert testimony at trial) does not support the existence of colorable
24 new mental state claims.  (*See id.* at 9, 11, citing *McWhorter*, 47 Cal.4th at 338-40.)

25       Respondent further argues that petitioner has not diligently pursued his federal rights.
26 (*See* Doc. No. 44 at 6-12.)  He argues that petitioner's counsel have not taken advantage of
27 opportunities for confidential legal and expert visitation with petitioner (*id.*, citing Doc. Nos.
28 31-1, 39-1), and for field investigation outside of San Quentin.  He argues that petitioner

cannot support diligence by pointing to (1) any investigation and development of unspecified non-record evidence and unexhausted claims, and (2) the investigatory standards set out in the ABA Guidelines and Supplemental Guidelines. (*Id.*, citing *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Cullen v. Pinholster*, 563 U.S. 170, 181, 185 (2011); *Bobby v. Van Hook*, 558 U.S. 4, 8-9 (2009).)

"A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Fue v. Biter*, 842 F.3d 650, 653 (9th Cir. 2016) (*en banc*) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Espinoza-Matthews v. California*, 432 F.3d 1021, 1026, n.5 (9th Cir. 2005) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288-89 (9th Cir. 1997), *partially overruled on other grounds by Calderon v. United States Dist. Ct. (Kelly V)*, 163 F.3d 530, 540 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202, 206 (2003), (approving prospective equitable tolling of the one year statute of limitations under 28 U.S.C. § 2244(d) where "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time).

Although there must be a causal link between the extraordinary circumstance and the inability to timely file the petition, a petitioner is not required to show the extraordinary circumstance made it literally impossible to file the petition on time. *Grant v. Swarthout*, 862 F.3d 914, 918 (9th Cir. 2017) (stating that equitable tolling is appropriate even where "it would have technically been possible for a prisoner to file a petition," so long as the prisoner "would have likely been unable to do so."). Among the factors that courts have considered relevant in deciding whether equitable tolling of the limitations period is appropriate are the complexity of the legal proceedings, and whether the state would suffer prejudice from the delay. *Hoyos v. Wong*, Case No. 09-cv-0388 L (NLS), 2010 WL 596443 at **4, 5 (S.D. Cal. Feb. 16, 2010).

Equitable tolling is limited to rare and exceptional circumstances and typically applied sparingly. *Cadet v. State of Florida Department of Corrections*, 853 F.3d 1216, 1221 (11th Cir. 2017). It may be appropriate where external forces, rather than a petitioner's lack of

diligence, account for the failure to file a timely claim. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also Holland*, 560 U.S. at 653 (equitable tolling requires reasonable diligence, not maximum feasible diligence); *Doe v. Busby,* 661 F.3d 1001, 1015 (9th Cir. 2011) (the effort required is what a reasonable person might be expected to deliver under his or her particular circumstances).

The Court finds that, at this point in time and on the facts and evidence now before it, continuing extraordinary circumstances raised by COVID-19 make the investigation, development, and presentation of a complete federal amended habeas petition extremely unlikely, if not impossible, prior to the requested as tolled date, notwithstanding the existing and anticipated exercise of reasonable diligence by petitioner and his counsel.[3]

Since this matter was last before the Court, the COVID-19 Omicron BA.4 and BA.5 subvariants caused a surge in infections, high community transmission risks, and restrictions upon visitation at San Quentin. *See www*.covid19.ca.gov/state-dashboard/ (last visited August 29, 2022); www.covid.cdc.gov/covid-data-tracker/ (last visited August 29, 2022). For example, petitioner states that this year, in-person visitation at San Quentin was effectively unavailable to him from early January through early March and from early May through June (*see* Doc. No. 43 at 5-6, n.5), and that counsel's scheduled May 2022 visit was canceled by the prison due to COVID-19 (*see* Doc. No. 43 at 6, n.7). He states that in March and April of this year, when in-person visitation at San Quentin was otherwise available, COVID-19 symptoms and sequestration amongst himself and the defense team prevented it. (*See* Doc. No. 43 at 6, n.7.) He states that as a result, counsel has visited him in-person only twice, in May 2021 and June of 2022, for one hour each visit. (*See* Doc. No. 43 at 5-6 and n.6.)

As respondent suggests, relative COVID-19 safety measures appear to be increasing and subvariants proportions appear to be decreasing. Respondent points out that the CDC recently streamlined its COVID-19 guidance, stating that "[t]here is significantly less risk of severe illness, hospitalization and death compared to earlier in the pandemic." (Doc. No. 44 at

---

[3] The Court again declines respondent's invitation to revisit its determination that petitioner may seek equitable tolling to develop additional claims. (*See* Doc. No. 42 at 7 n.4.)

4, citing www. cdc.gov/media/releases/2022/p0811-covid-guidance.html.) Relatedly, the Court takes notice that[4]:

> COVID-19 cases, deaths, and test positivity within California have largely begun to decline.
>
> 80.1% of Californians have received at least one dose of COVID-19 vaccine.
>
> California's COVID-19 test positivity rate has declined to 8.7%.
>
> Community transmission risks of COVID-19 in Marin and Fresno Counties recently moved from high to medium.
>
> California's COVID-19 universal indoor masking requirement expired on February 15, 2022.
>
> The California Department of Public health neither requires nor recommends COVID-19 masking in private indoor settings.

*See* www.covid.cdc.gov/covid-data-tracker/ (last visited August 29, 2022); www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last visited August 31, 2022); www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Guidance-for-Face-Coverings.aspx. (last visited August 31, 2022); www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#infection-control. (last visited August 31, 2022); www.covid19.ca.gov/state-dashboard/ (last visited August 29, 2022).

Still, there appears no dispute that COVID-19 continues to circulate. Petitioner states that within the two weeks preceding filing of the instant motion, there were sixteen thousand new daily cases in California and twenty-nine new cases among inmates and staff at San Quentin. (*See* Doc. No. 43 at 4.) The Court takes notice that[5]:

> San Quentin continues to see new cases of COVID-19.
>
> San Quentin remains on a modified program limiting in-person visitation of condemned inmates to one hour time slots available two days a week, upon appointment at least eight days in advance.
>
> Masking is still required in correctional facilities with

---

[4] Fed. R. Evid. 201(b).
[5] See n.4.

7

> community transmission risks of medium, suggesting that masks are presently required at San Quentin.
>
> The community transmission risks in Kern County, where potential witnesses reside, remain high.

*See* www.cdcr.ca.gov/covid19/population-status-tracking/ (last visited August 31, 2022); www.cdcr.ca.gov/visitors/visiting-status/ (last visited August 29, 2022); www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last visited August 31, 2022); www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Guidance-for-Face-Coverings.aspx. (last visited August 31, 2022); www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#infection-control. (last visited August 31, 2022); www.covid19.ca.gov/state-dashboard/ (last visited August 29, 2022); www.covid.cdc.gov/covid-data-tracker/ (last visited August 29, 2022).

Significantly, the CDC, in its most recent guidance, recognized that actions to take in response to the COVID-19 pandemic will continue to be informed by the COVID-19 Community Levels. *See* www.cdc.gov/media/releases/2022/p0811-covid-guidance.html (last visited September 2, 2022).

The Court finds that petitioner has shown extraordinary impacts of COVID-19 impeding the defense team's investigation and development of non-record evidence and potentially colorable claims.[6] The record before the Court and matters judicially noticed show that during the most recent COVID-19 Omicron BA.4 and BA.5 subvariant surge and its aftermath, the defense team has been delayed and denied with regard to prison visits, an investigatory mitigation plan, and development of potential new evidence and colorable claims. Even assuming the ongoing availability of confidential legal phone calls at San Quentin, the facts and circumstances of this case suggest such calls would not afford effective communication with petitioner. (*See e.g.*, Doc. No. 43 at 7.)  As the Court observed in its most recent order granting equitable tolling in this case, "the time reasonably necessary to marshal

---

[6] Cf. *Dennis v. Woodford,* 65 F.Supp.2d 1093, 1097 n.5 (N.D. Cal. 1999) (rejecting an equitable tolling claim due to "lack of specific, particularized facts which would make equitable tolling appropriate.").

1 and develop investigative facts, and provide them to forensic and mental health experts for
2 their examination and opinion, already has been lost, and the post-surge recovery period
3 presents additional delay." (*See* Doc. No. 42 at 8.)

4     Additionally, the Court finds that petitioner and his counsel have shown continuing and
5 anticipated reasonable diligence in pursuing new potentially colorable federal claims
6 notwithstanding COVID-19. *See Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012)
7 (citing *Holland*, 560 U.S. at 653) ("The diligence required for equitable tolling purposes is
8 reasonable diligence, not maximum feasible diligence."). For example, the noted record
9 reflects counsel's reasonable efforts investigating and developing facts and information from
10 petitioner and the assembled record. To the extent respondent argues that petitioner has not
11 demonstrated reasonable diligence prior to the time this case was last before the Court, he
12 provides no sufficient basis for the Court to reconsider its previous findings otherwise. (*See*
13 Doc. Nos. 28, 36, 42.)

14     Given the foregoing, the general availability of COVID-19 vaccines, treatments, and
15 safety practices noted by respondent, alone are unlikely to mitigate these ongoing exceptional
16 circumstances in a way that would allow timely presentation of a complete federal amended
17 habeas petition prior to the requested as tolled date. Especially so, given the allegedly
18 insufficient investigation by state post-conviction counsel, and the Court's previous
19 observation that this case involves complex issues and a voluminous record, suggesting that an
20 extensive investigation is required by petitioner's counsel and the defense team. (*See* Doc. No.
21 42 at 9, citing Doc. No. 36 at 8 and Doc. No. 28 at 5); *see also Hoyos*, 2010 WL 596443 at *4–
22 5.

23     Finally, respondent does not suggest that he would suffer any prejudice should the
24 requested relief be granted. The Court finds no reason to believe that respondent would suffer
25 any prejudice from the additional six month delay in the filing of the amended petition sought
26 by petitioner's counsel. Nothing before the Court suggests any significant impact upon the
27 ability of respondent to oppose any challenges raised by petitioner to his underlying judgment
28 of conviction.

B.     *Rhines* Stay

Petitioner seeks alternative relief in the form of a stay pursuant to *Rhines v. Weber*, pending the filing of a federal first amended petition for writ of habeas corpus.   544 U.S. 269 (2005).

A federal court may not grant habeas relief until the petitioner has exhausted available state remedies with respect to each claim.  28 U.S.C. § 2254(b); *Connor*, 404 U.S. at 272.  A petitioner satisfies the exhaustion requirement by fairly presenting to the highest state court all federal claims before presenting those claims for relief to the federal court.  *See e.g., Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *Wooten v. Kerkland,* 540 F.3d 1019, 1025 (2008).

Pursuant to *Rhines*, stay and abeyance of a federal habeas petition that includes both exhausted and unexhausted claims is appropriate in "limited circumstances" where (1) "the petitioner has good cause for his failure to exhaust," (2) "his unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  544 U.S. at 277-78.  The decision whether to grant a *Rhines* stay is subject to the discretion of the district court.  544 U.S. at 276; *see also Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005) (when the three *Rhines* factors are satisfied, however, "it likely would be an abuse of discretion for a district court to deny a stay[.]")

Nothing before the Court suggests that petitioner needs and is entitled to a stay of these federal proceedings for state court exhaustion because the federal protective petition on file does not include unexhausted allegations.[7]  As respondent observes, petitioner advances no argument or authority in support of a *Rhines* stay of the exhausted record-based claims included in previously filed protective petition.  (*See* Doc. No. 44 at 13.)  Petitioner concedes these claims are exhausted.  (*See* Doc. No. 43 at 2 n.3.)  Furthermore, the alternative request to stay proceedings pursuant to *Rhines* is moot because equitable tolling is granted hereunder.

---

[7] Nor does petitioner demonstrate any basis to stay these proceedings under the three-step process set out in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007) (i.e. deleting unexhausted claims from a petition in order to reinsert them upon exhaustion), or under the Court's inherent power to manage its dockets.  *See Ryan v. Gonzales,* 568 U.S. 57, 73-74 (2013) (citing *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).

C. Conclusions

The Court concludes that extraordinary circumstances of the COVID-19 pandemic continue to impede petitioner's right to the assistance of appointed habeas counsel in preparing a complete federal amended habeas petition prior to the requested as tolled date of January 30, 2023, notwithstanding reasonable diligence by petitioner and his counsel.[8]  *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 855-57 (1994) (given the complex nature of capital habeas proceedings and the seriousness of the possible penalty, an attorney's assistance in preparing a federal habeas corpus petition is crucial and includes a right for that counsel meaningfully to research and present a defendant's claims); *McCleskey v. Zant*, 499 U.S. 467, 498 (1991), *superseded by statute as recognized in Banister v. Davis*, __U.S.__, 140 S. Ct. 1698, 1707 (2020) (in the pre-AEDPA context, stating that "[P]etitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition."). The Court further concludes the alternative motion for stay of federal proceedings pursuant to *Rhines* is unsupported legally and factually, and in any event is moot.

Accordingly, petitioner's fifth motion for equitable tolling (Doc. No. 43) is granted. Petitioner shall file his federal amended habeas petition on or before January 30, 2023. Petitioner's alternative motion for a *Rhines* stay (*id.*) is denied.

IT IS SO ORDERED.

Dated:   **September 8, 2022**

UNITED STATES DISTRICT JUDGE

---

[8] The Court rejects respondent's argument, unsupported by legal authority, that petitioner may not seek prospective equitable tolling after expiration of the petition filing deadline.  Moreover, the relief granted hereunder is in anticipation of the requested as tolled date of January 30, 2023 and the filing of a federal amended petition, and thus prospective.  *See Fue*, 842 F.3d at 653; *Beeler*, 128 F.3d at 1288-89.