**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD ALLEN McWHORTER,<br><br>Petitioner,<br><br>v.<br><br>RON BROOMFIELD, Warden of California State Prison at San Quentin,<br><br>Respondent.[1] | Case No.  1:20-cv-00215-JLT<br><br><u>DEATH PENALTY CASE</u><br><br>TENTATIVE ORDER ON RENEWED MOTION FOR FURTHER EQUITABLE TOLLING<br><br>[15-Day Deadline] |

## I.     INTRODUCTION

On May 15, 2023, Petitioner Richard Allen McWhorter, through appointed counsel Saor Stetler and Kresta Daly, filed his federal amended habeas corpus petition pursuant to 28 U.S.C. § 2254 (Doc. 63), and concurrently renewed his previously denied request to further equitably toll the limitations deadline pursuant to 28 U.S.C. § 2244(d)(1) from January 30, 2023 to filing of the federal amended petition. (Doc. 64). The renewed motion for further equitable tolling is now before the Court. Respondent opposes this motion. (Doc. 65.) The renewed motion for further equitable tolling is deemed submitted for a decision.  (*Id.*)

Having considered the pleadings, the record, and matters judicially noticed, the Court

---

[1] Pursuant to the Federal Rules of Civil Procedure, Rule 25(d), Ron Broomfield, Warden of San Quentin State Prison, shall be substituted as Respondent in place of his predecessor wardens.

1

tentatively will deny the renewed motion for further equitable tolling.  The Court will grant Petitioner's request for an opportunity to make a supplemental showing ex parte and in camera to the Court of privileged materials supporting the motion.  (*See* Doc. 66, at 2.)  Within 15 days, Petitioner may file under seal any supplemental materials protected by privilege that support the instant motion. Local Rule 141.  If Petitioner does submit the materials within this deadline, the Court's tentative order will become final.

## II. BACKGROUND

On February 26, 1998, Petitioner was convicted of two first degree murders and first-degree residential robbery. The special circumstances of multiple-murder and robbery-murder were found true, and he was sentenced to death. *People v. Richard Allen McWhorter*, Kern County Superior Court Case No. 65352A.

The California Supreme Court affirmed Petitioner's judgment of conviction and sentence on automatic appeal. *People v. Richard Allen McWhorter*, 47 Cal. 4th 318, *rehearing denied October 14, 2009, as modified October 14, 2009*.  On October 4, 2010, the United States Supreme Court denied certiorari. *Richard Allen McWhorter v. California,* 562 U.S. 844. Thereafter, the California Supreme Court summarily denied Petitioner's habeas corpus petition. *In re McWhorter,* Cal. Case No. S180404.

On February 11, 2020, Petitioner began this federal habeas proceeding pursuant to Section 2254 (Docs. 1, 2) and the Court appointed him counsel in late March. (Doc. 9, citing 18 U.S.C. § 3599.)

On July 24, 2020, Respondent lodged the record.  (Docs. 16, 17, 18.) Three months later, the Court granted Petitioner's motion to equitably toll the limitations deadline under Section 2244 from January 22, 2021, to and including March 31, 2021, due to delay in the appointment of federal habeas counsel.  (Doc. 22.)

The Court granted further equitable tolling of the Section 2244 deadline through January 30, 2023 in response to Petitioner's second through fifth motions, on grounds extraordinary circumstances raised by the COVID-19 pandemic impeded investigation, development, and presentation of his federal claims.  (Docs. 28, 36, 42, 46.)

1   During the period of tolling, on October 22, 2021, Petitioner filed in this proceeding a 297-page (protective) petition pursuant to Section 2254 stating 22 fully exhausted record-based claims. (Doc. 34.)

On March 6, 2023, the Court denied without prejudice to renewal Petitioner's sixth motion for equitable tolling, which sought to prospectively toll the January 30, 2023 deadline for filing his amended federal petition. (Doc. 50.) The Court found that Petitioner did not make a sufficient showing that extraordinary circumstances raised by COVID-19, his impaired mental and physical health, and his counsel's need for additional Criminal Justice Act entitled him to further equitable tolling. (*Id.*)

III.   DISCUSSION

Petitioner argues that notwithstanding reasonable diligence, the following extraordinary circumstances impeded investigation, development, and presentation of the federal amended petition: (i) COVID-19 and its aftermath delaying and denying defense team access to Petitioner and witnesses, (ii) Petitioner's impaired mental and physical health and cognitive decline, and (iii) delays in retaining and conferring with experts due to (i) and (ii) above. (*See* Doc. 64, at 3-8.)

Respondent opposes further equitable tolling, arguing the instant renewal motion is "vague, summary, and provides no evidence in support of its claims and assertions" and "reasserts substantially the same claims this Court rejected in its denial of Petitioner's sixth motion for prospective equitable tolling." (Doc. 65, at 1-2; *see also id*. at 4-15.) He argues that Petitioner has not shown COVID-19 and his physical and mental conditions impeded development and presentation of the five claims newly added in the amended petition (i.e. Claim 5 raising trial incompetence; Claim 17 raising execution incompetence; Claim 22 raising denial of equal protection and due process based upon limitations of Criminal Justice Act funding; Claim 24 raising ineffective assistance of appellate counsel; and Claim 25 raising ineffective assistance of state habeas counsel). (Doc. 65, at 3-15; *see also* Doc. 63.)

Respondent also argues that in any event, certain of the newly added Claims lack merit. He argues Claims 5 and 17 alleging incompetence lack merit because they are unsupported by expert opinion. (*See* Doc. 65, at 12-14.) He argues that Claim 25 alleging ineffective assistance

3

of state habeas counsel lacks merit because there is no constitutional right to post-conviction counsel.  (*See* Doc. 65, at 14.)

The limitations period for Section 2254 petitions is subject to equitable tolling in appropriate circumstances.  *Holland v. Florida*, 560 U.S. 631, 645-49 (2010).  However, application of the equitable tolling doctrine is the exception rather than the norm.  *See e.g., Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (characterizing the Ninth Circuit's "application of the doctrine" as "sparing" and a "rarity"); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) ("equitable tolling is unavailable in most cases").  A habeas petitioner may receive equitable tolling only if he "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S., at 649; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 & n.8 (2005) (same); *Fue v. Biter*, 842 F.3d 650, 653 (9th Cir. 2016) (en banc) (same); *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) (same).

Both elements must be met.  *Pace*, 544 U.S., at 418 (finding that the petitioner was not entitled to equitable tolling because he had not established the requisite diligence).  A petitioner seeking application of the doctrine bears the burden of showing that it should apply to him.  *Id.*; *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (to receive equitable tolling, the petitioner must prove the above two requirements).

The first equitable tolling requirement, diligence, is a separate inquiry from the extraordinary circumstance inquiry and "covers those affairs within the litigant's control." *Menominee Indian Tribe of Wisconsin v. U.S.*, 577 U.S. 250, 256 (2016).  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."  *Holland*, 560 U.S., at 653.  A petitioner must demonstrate diligence at all times up to the filing of the federal habeas petition, not only during the time an alleged impediment stood in his way of timely filing.  *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc).

The second equitable tolling requirement is a causation requirement.  *Davis*, 953 F.3d, at 597-600.  A petitioner must establish not only the existence of an extraordinary circumstance but also that it was, in fact, the cause of the untimely filing of the federal habeas petition.  *Davis*, 953

F.3d, at 600 ("[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy."); *see also Bryant v. Arizona Att. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (a petitioner must show that the claimed extraordinary circumstances were the cause of his untimeliness and not his own lack of diligence). Still, a petitioner is not required to show the extraordinary circumstance made it literally impossible to file the petition on time. *See Grant v. Swarthout*, 862 F.3d 914, 918 (9th Cir. 2017) (stating that equitable tolling is appropriate even where "it would have technically been possible for a prisoner to file a petition," so long as the prisoner "would have likely been unable to do so.").

Equitable tolling is limited to rare and exceptional circumstances and typically applied sparingly. *Cadet v. State of Florida Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017). It may be appropriate where external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim. *Miles*, 187 F.3d, at 1107; *see also Holland*, 560 U.S., at 653 (equitable tolling requires reasonable diligence, not maximum feasible diligence); *Doe v. Busby,* 661 F.3d 1001, 1015 (9th Cir. 2011) (the effort required is what a reasonable person might be expected to deliver under his or her particular circumstances). Among the factors that courts have considered relevant in deciding whether equitable tolling of the limitations period is appropriate are the complexity of the legal proceedings, and whether the state would suffer prejudice from the delay. *Hoyos v. Wong*, Case No. 09-cv-0388 L (NLS), 2010 WL 596443, at **4, 5 (S.D. Cal. Feb. 16, 2010). On the facts and circumstances presently before the Court, Petitioner has not met his burden under *Holland*, for the reasons discussed below.

1.  COVID-19

Petitioner argues that during the period of requested tolling, impediments raised by COVID-19 denied his counsel and the defense team in-person access to him at San Quentin State Prison, where he lives. He points out that his counsel were appointed in early 2020, just as the COVID-19 lockdown began; that his counsel were denied in-person visitation until mid-2021; and that on unspecified occasions thereafter his counsel occasionally were denied in-person access until the fall of 2022, when regular in-person visitation lasting an hour became available.

(*See* Doc. 64, at 3-5.)

Petitioner also suggests that during the period of requested tolling, impediments raised by COVID-19 somehow denied counsel and the defense team access to lay witnesses. Relatedly, he states that "[his counsel have] determined there are additional penalty phase witnesses who need to be located and interviewed. Counsel believe additional penalty phase issues require investigation. . ." (Doc. 64, at 7.) He states that:

> Because of COVID and the dangers it posed attempts by an investigator working on Mr. McWhorter's team to meet in person with a witness were likely to backfire by resulting distrust and anger from the witness and thus preclude future productive contact. Telephone or video calls are an insufficient substitute for in person, one-on-one interviews, because they do not guarantee privacy or safety to the witness, they deprive the interviewer of important nonverbal cues and evidence, they assume facts about the witness such as the witness's ability to hear and understand, and they do not promote in the witness the development of trust. *Doe v. Ayers*, 782 F.3d at 438–39.

(Doc. 64, at 7.) The Court observes that Petitioner first asserted this argument in his second motion for equitable tolling filed March 3, 2021, (*see* Doc. 23, at 7-8), a time when COVID-19 metrics were much more dire (*see* Doc. 23, at 3-10). Also, as he has done with his earlier motions, Petitioner points to American Bar Association, Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, (*see* Doc. 64, at 6, citing 36 Hofstra L. Rev. 677 (2008), Guideline 10.11), and surmises that trial counsel's mitigation investigation was lacking, exacerbating the impediments his counsel otherwise faced. (Doc. 64, at 7.)

The Court is unpersuaded that during the requested period of tolling, COVID-19 raised an extraordinary circumstance that impeded assembly of the defense team; investigation and development of new claims and evidence and related consultation with experts; and presentation of a complete federal amended petition. The COVID landscape has changed dramatically over the last 12 to 18 months and Petitioner has failed to address this changed environment. Rather, he continues to exhort the circumstances that existed in 2020 and 2021.

When it denied Petitioner's sixth equitable tolling motion, the Court observed then that the improving COVID-19 landscape and metrics including that Petitioner's counsel had regular in-person visitation with him since September 2022 totaling upwards of 20 hours (*see* Doc. 50, at 5-6); that counsel had an investigatory plan for the federal amended petition that identified evidence

1  and claims to be developed, witnesses to be interviewed, and the required expert consultation (*see*
2  *id.*); and that counsel failed to make any sufficient showing of diligence, such as by explaining
3  even in general terms when milestones were achieved, what portion of work on the federal
4  amended petition had been accomplished, and why the work had not come to fruition (*see id.* at
5  10-11).

6      The Court remains unpersuaded that that during the period of requested tolling COVID-19
7  and its aftermath impeded pursuit of the investigatory plan including defense team access to
8  Petitioner, witnesses, and experts; and development and presentation of the newly asserted
9  Claims.  Especially so, given facts in the record that appear to suggest a basis for at least some of
10 the newly added federal Claims (*see e.g.*, *McWhorter*, 47 Cal.4th, at 335-44, 361-73; Doc. 81-4;
11 Doc. 18-20); counsel's regular in-person access to Petitioner since at least September 2022 (Doc.
12 47, at 7; Doc. 49, at 4); and continuing low risk of COVID-19 and elimination of regulatory
13 countermeasures in areas of the field investigation (*see e.g.*, Doc. 50, at 5-6, matters judicially
14 noticed); Doc. 46, at 6-7, matters judicially noticed).

15      Relatedly, the Court observed in its March 6, 2023 order denying further equitable tolling
16 that:

> California has vaccinated 72.6% of its population with a primary series, and has seen a relative reduction in cases (6.6 new cases per 100,000), deaths (0.1 new deaths per 100,000), and test positivity (5.7%) (*see* https://covid19.ca.gov/state-dsahboard/) (last visited February 13, 2023).
>
> San Quentin is in the open phase (modified) for death row in-person visitation three days per week allowing up to two and one-half hours per visit (*see* http://www.cdcr.ca.gov/visitors/visiting-status/) (last visited February 13, 2023), regardless of vaccination status, and face coverings, while encouraged, are no longer required (*see* https://www.cdcr.ca.gov/vistors/vaccination-testing-procedures-for-vistors/) (last visited February 13, 2023).
>
> The community transmission risk level in Marin County where San Quentin is located, and in Fresno and Kern Counties where witnesses are located, is low (*see* https://covid19.ca.gov/safely-reopening/#what-to-do-now) (last visited February 13, 2023).

26 (Doc. 50, at 6.)  The Court takes notice that these metrics continued to show general improvement
27 during the period of requested tolling.  *See*  Tracking COVID-19 in California - Coronavirus
28 COVID-19 Response (last visited July 3, 2023); CDC COVID Data Tracker: Maps by

Geographic Area (last visited July 3, 2023); Visiting Status for San Quentin State Prison (ca.gov) (last visited July 3, 2023); Fed. R. Evid. 201(b).

Petitioner's observation that California's COVID-19 state of emergency orders continued through February 28, 2023, and the generalized statements of his counsel regarding occasional limitations upon in-person visitation at San Quentin and unspecified problems accessing witnesses are not a basis to find otherwise. As was the case when this matter was most recently before the Court, Petitioner's counsel fail to demonstrate on the facts and circumstances before the Court that COVID-19 raised an extraordinary impediment to development and presentation of the federal amended petition. (*See* Doc. 50, at 10-11; Docs. 64, 66.)

2.      Petitioner's Mental and Physical Health and Cognitive Decline

Petitioner argues that during the period of requested tolling, impediments raised by his advanced age (74 years old), underlying physical and mental problems, and declining health overall limited the amount of time counsel and the defense team otherwise had available during scheduled in-person prison visits. For example, his counsel point to Petitioner's need for restroom breaks and related cuffing/uncuffing; use of a wheelchair and occasional unsteadiness on his feet; tendency to be easily distracted and apparent memory issues; and difficulty in communicating. (Doc. 64, at 5-6.)

The Court is unpersuaded that during the requested period of tolling, Petitioner's mental and physical health and cognitive decline raise extraordinary circumstances impeding investigation, development, and presentation of the federal amended petition. The Court previously observed that:

> In some circumstances, a mental illness or physical ailment can present an extraordinary circumstance for purposes of equitable tolling. *See Miles v. Grounds*, No. 1:12-CV-00812 AWI, 2013 WL 2337912, at *5 (E.D. Cal. May 28, 2013) (citing *Laws v. Lamarque,* 351 F.3d 919, 923 (9th Cir.2003)) (equitable tolling denied where petitioner, who suffered from progressive multiple sclerosis, failed to demonstrate his physical impediments were the cause of the delay in not timely filing the petition); *Williams v. Kernan*, No. 218CV2841JAMDBP, 2020 WL 2992000, at *5 (E.D. Cal. June 4, 2020), *report and recommendation adopted*, No. 218CV2841JAMDBP, 2021 WL 1172541 (E.D. Cal. Mar. 29, 2021) (citing *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010)) (equitable tolling based upon mental impairment requires a showing the mental impairment is an extraordinary circumstance beyond petitioner's control that was so severe he did not understand the need to file or was unable to personally prepare a habeas petition); *Rosiles v.*

*Pfeiffer*, No. 2:17-CV-02600 KJM GGH, 2019 WL 3996399, at *5 (E.D. Cal. Aug. 23, 2019), *report and recommendation adopted, No. 2:17-CV-02600 KJM GGH, 2020 WL 230001 (E.D. Cal. Jan. 15, 2020)* (under limited circumstances, a petitioner's mental impairment may represent an extraordinary circumstance warranting equitable tolling for the period he was incompetent).

(Doc. 50, at 8-9.)

The Court previously observed matters in the record suggesting that Petitioner's counsel and the defense team were not limited by extraordinary circumstances of Petitioner's mental and physical state and cognitive functioning. For example, the Court in its recent order denying further equitable tolling, observed that:

> Counsel's anecdotal observation and surmise fall short of facts demonstrating extraordinary mental and physical impairment and lack of stamina. Petitioner relies upon counsel's observations that during regular visitation (1) petitioner was "unable to safely walk even short distances or even stand for any period of time[,]" (2) petitioner "can only hold a conversation for short periods of time, has difficulty concentrating, easily loses his train of thought and frequently has to correct information he imparts to counsel[,]" and (3) petitioner's "ability to accurately and effectively respond to questions from counsel declines over the course of an hour, at the end of which he is visibly tired." (*See* Doc. 47 at 6-7.) Counsel's observations fall short of facts showing that petitioner's mental and physical impediments and age caused his failure to timely file an amended federal petition. Furthermore, the fact counsel were able to formulate an investigative plan identifying new claims and evidence, witnesses, and required expert opinion, suggests these impairments were not overly limiting. In sum, on the facts and circumstances now before it, the Court finds that petitioner has not demonstrated that his mental and physical condition and age raised an exceptional circumstance that caused his failure to timely file an amended federal petition, under the *Holland* standard.

(Doc. 50, at 9; *see also* Doc. 64, at 5-6; Doc. 66, at 2.) Given counsel's regular in-person access to Petitioner since the fall of last year, counsel's alleged inability retain and consult with experts regarding the newly alleged Claims and supporting evidence and witnesses is all the more dubious, as discussed below. (*See* Doc. 50, at 6, 10-11.) In any event, it remains that Petitioner has not made a factual showing that during the period of requested tolling extraordinary circumstances raised by his mental and physical condition and age impeded investigation, development, and presentation of the federal amended petition.

3.  Retaining and Conferring with Experts

Petitioner argues that during the period of requested tolling, his counsel had difficulties securing experts and have been unable meaningfully to confer with needed experts. (*See* Doc. 64,

at 6, 8.) He states that additional penalty phase issues require investigation and the assistance of experts (Doc. 64 at 7), including "reviewing background materials and witness statements . . . [and] conduct[ing] clinical interviews and intellectual, psychological, and neuropsychological testing[.]" (Doc. 64, at 8.) Petitioner's counsel, in the instant motion state that:

> Counsel have contacted a number of experts with regard to the issues identified but have had difficulties securing assistance. Many experienced experts do not have time to take on more work. Counsel do not know if this is a pandemic related backlog of [sic] if those experts re-prioritized and are simply accepting less work. Other qualified experts who counsel contacted are unwilling to work for the current appointed rates or would be unable to assist given the pressing time constraints. Given [Petitioner's] cognitive decline counsel had to shift the focus of their search for appropriate experts.

(Doc. 64, at 6.) Counsel go on to state that:

> Counsel have identified and conferred with numerous experts who were unable or unwilling to assist in this case given the constrained timeline for investigation and preparation of the amended petition.

(Doc. 64, at 8.)

As in prior motions, Petitioner's counsel cite to American Bar Association Guidelines regarding counsel's duty to consult with forensic and mental health experts on guilt and penalty phase issues, but counsel fail to apply the Guidelines to the facts and circumstances of this case. (*See* Doc. 64, at 8, citing Guidelines, Guideline 10.7 and Commentary; *see also* Doc. 50, at 7.) To the extent counsel suggest for the first time that "given [Petitioner's] cognitive decline" they have had to "shift the focus of their search for appropriate experts[,]" (*see* Doc. 64, at 6), counsel do not explain how this shift in focus raises an exceptional circumstance under *Holland*. Again, the Court is unconvinced that during the requested period of tolling, difficulties retaining and conferring with one or more experts raise an extraordinary impediment to development and presentation of the federal amended petition.

   4.   Reasonable Diligence

Petitioner argues, at least inferentially that he and his counsel have been reasonably diligent based upon their joint efforts at in-person visitation and counsel's singular efforts to develop newly discovered facts and retain expert consultation thereon. (*See* Doc. 64, at 3-8.) However, even if Petitioner could show extraordinary circumstances under *Holland*, the Court is

10

unpersuaded on the facts and circumstances before it that he and his counsel have been reasonably diligent during the period of requested tolling.  *See Ford*, 683 F.3d, at 1237, citing *Holland*, 560 U.S., at 653).

Petitioner's repeated revisiting of matters previously considered and rejected by the Court does not demonstrate reasonable diligence.  (*See* Doc. 50, at 10-11.)  Significantly, Petitioner's counsel again fail to explain even in general terms when their investigatory plan was formulated, and why the plan was not completed until May 15, 2023, if at all.  (*See* generally Docs. 50, 64, 66); *see also Smith*, 953 F.3d, at 601.  Counsel themselves seem uncertain as to just what has impeded their progress.  On the one hand, counsel state that "[d]ue to difficulties in securing expert and investigative assistance, [they] have been unable to interview witnesses that have been identified."  (Doc. 64, at 7.)  On the other hand, counsel state that "delays in the collection of documents and the interviews of witnesses result in delays in expert consultation."  (Doc. 64, at 8.)

Although counsel now suggests that Petitioner's declining cognitive state necessitated a "shift in focus" in their search for appropriate experts (*see* Doc. 64, at 6), the Court is left in the dark as to how and why counsel has been reasonably diligent in this regard.  Especially so, given counsel's concession that their unexplained difficulties retaining necessary expert consultation has left newly alleged Claims in the federal amended petition "without the benefit of the investigation and expert assistance that was anticipated."  (Doc. 64, at 8.) Finally, Petitioner again fails to make any showing that matters of case complexity and lack of prejudice to Respondent weigh in favor of further tolling.  (*See* Doc. 50, at 7, citing *Hoyos*, 2010 WL 596443, at **4, 5.)

## IV.   CONCLUSIONS

Petitioner "bears a heavy burden to show that [he] is entitled to equitable tolling, lest the exceptions swallow the rule."  *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2015); *see also Milam v. Harrington*, 953 F.3d 1128, 1132 (2020) (citing *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002)) (the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him."). He has failed to meet this burden of showing that notwithstanding his reasonable diligence and that of his counsel, extraordinary circumstances

impeded the investigation, development, and presentation of a federal amended petition during the period of requested tolling.  *See* § 3599(a)(2); *Dennis v. Woodford,* 65 F. Supp. 2d 1093, 1097 n.5 (N.D. Cal. 1999) (rejecting an equitable tolling claim due to "lack of specific, particularized facts which would make equitable tolling appropriate[.]").

    The Court again observes AEDPA's acknowledged purpose of "reduc[ing] delays in the execution of state and federal criminal sentences." *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *see also Carey v. Saffold,* 536 U.S. 214, 226 (2002) (statutory purpose of limitations period is to "encourag[e] prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."); *Welch v. Carey,* 350 F.3d 1079, 1083 (9th Cir. 2003) (same); (*see also* Doc. 22, at 14; Doc. 50, at 7). Accordingly, the Court tentatively **DENIES** Petitioner's renewed motion for further equitable tolling.  (Doc. 64.)  No later than **15 days** following service of this order and consistent with Local Rule 141, Petitioner may submit ex parte and in camera to the Court for sealing supplemental materials protected by privilege that support the instant motion, along with the requisite Notice of Request to Seal filed on the public docket. Thereupon the Court will rule on the sealing request, and the instant motion will stand submitted. If Petitioner fails to meet this deadline, the Court's tentative order issue here shall become final.

IT IS SO ORDERED.

Dated:   **July 13, 2023**

UNITED STATES DISTRICT JUDGE